IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES A. DICKERSON, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-802 |
| ) | |
| DETECTIVE CHARLES ROBINSON, ) | Judge Trauger |
| DETECTIVE NORRIS TARKINGTON, and ) | |
| ASSISTANT DISTRICT ATTORNEY ) | |
| PAUL DEWITT, ) | |
| ) | |
|    Defendants. ) | |

**MEMORANDUM OPINION**

     Plaintiff Charles Dickerson, a state prisoner presently incarcerated at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed his *pro se* complaint purporting to set forth claims for civil rights violations under 42 U.S.C. § 1983. He proceeds *in forma pauperis*. His complaint is before the court for an initial review pursuant to 28 U.S.C. § 1915 and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

     The complaint names as defendants Charles Robinson and Norris Tarkington, detectives with the Metro-Nashville Police Department, and Assistant District Attorney Paul DeWitt, in their individual capacity only. For the reasons set forth below, the court finds that the complaint fails to state a claim for which relief may be granted under § 1983 and must therefore be dismissed.

**I.    Factual Allegations**

     The plaintiff alleges that on November 14, 2011, he became aware of the existence of a document entitled "Metropolitan Nashville Police Department Supplemental Report" (hereafter, "Supplemental Report"). The Supplemental Report purports to relate the substance of an interview of the plaintiff conducted on November 4, 2009 by Detectives Tarkington and Robinson, along with Assistant U.S. Attorney Sunny Koshy, concerning the murder of the plaintiff's brother, Michael Dickerson, in 1996. (ECF No. 1, at 7–8.) According to the Supplemental Report, which appears to have been authored by Detective Tarkington, the plaintiff relayed to the interviewers information regarding the identity of the murderers, the identity of the individuals from whom he had learned this information, and the probable motive for the murder.

In his complaint, the plaintiff states that he learned that the Supplemental Report had been "circulating through the prison system for several months" (ECF No. 1, at 4), and he believes it was produced by the government in response to a motion for discovery filed by Glen Daniel Sharber, III, an inmate incarcerated in West Tennessee State Penitentiary. Sharber is implicated as one of the murderers in the Supplemental Report. The plaintiff asserts that the document is completely "bogust" [sic] and must have been created by Detectives Tarkington and Robinson. He claims he contacted his former defense attorney, and through her verified that Assistant District Attorney Paul DeWitt was assigned to the prosecution of the defendants charged with murdering the plaintiff's brother. The plaintiff wrote DeWitt a letter, enclosing a copy of the Supplemental Report. He explained in the letter that the Report was completely fabricated and that the plaintiff had never made a statement to anyone involved in his brother's homicide case. He asked DeWitt to send him a letter clearing his name in that regard.

The plaintiff alleges that, in the meanwhile, gang members had been ordered to kill him because of his alleged statements in the Supplemental Report. As a result of the order, the plaintiff was attacked and stabbed in the head and stomach on November 22, 2011 by two other inmates.[1] Thereafter, he and his mother both contacted Assistant District Attorney DeWitt to notify him that this attack was perpetrated "because of the false Supplement . . . which put [the plaintiff's] life in jeopardy, for accusations [he] did not make." (ECF No. 1, at 5.) In response, DeWitt sent the plaintiff a letter stating simply:

> We have no intention at this time of calling you as a witness to testify in any case where Thomas Carey or any other defendant charged with murdering your brother Michael might be tried. It appears you are not a direct witness to any event related to the murder and that any testimony you might have would be hearsay and not admissible as evidence.

(ECF No. 1, at 13.)

The plaintiff states that he seeks damages for pain and suffering resulting from the knife wounds, as well as a public apology and a letter from the defendants stating that he did not make any statements regarding any of the defendants involved in his brother's murder case.

---

[1] The Disciplinary Report attached to the complaint indicates that the plaintiff and two other inmates were all charged with fighting with deadly weapons. (*See* ECF No. 1, at 11–12.)

## II.     Standard of Review

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the court must dismiss any portion of a civil complaint that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. The Sixth Circuit has confirmed that "the dismissal standard articulated in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] and [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.    Law and Analysis

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). In the present case, although the individuals named as defendants may be deemed persons acting under color of state law, the plaintiff has not shown that these individuals violated any right secured by the United States Constitution.

The plaintiff, in fact, does not identify which of his rights he believes to have been violated. If the defendants themselves completely fabricated the Supplemental Report and were responsible for circulating it in the prison system, they might potentially be liable under *state* law for defaming the plaintiff, but not under

-3-

federal law.[2] The Fourteenth Amendment of the United States Constitution forbids state actors from depriving an individual of life, liberty, or property without due process of law, but defamation, without more, does not state a claim under 42 U.S.C. § 1983, because harm or injury to reputation does not result in a deprivation of any "liberty" or "property" protected by the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Thus, to the extent the plaintiff seeks to raise § 1983 claims based upon a theory of defamation, those claims must fail because they do not involve the violation of rights secured by the Constitution and laws of the United States. *See Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("[D]efamation, by itself, does not constitute a remediable constitutional claim."); *Azar v. Conley*, 456 F.2d 1382, 1389 (6th Cir.1972) ("[T]he Civil Rights Act does not give rise to a cause of action for slander.").

In short, the complaint fails to state a claim under § 1983 against any of the defendants. Further, to the extent the complaint might be construed to state a cause of action under Tennessee law for defamation, the court lacks supplemental jurisdiction over that claim in the absence of a colorable federal claim over which the court might appropriately exercise original jurisdiction.

## IV. Conclusion

For the reasons set forth herein, the plaintiff's claims under 42 U.S.C. § 1983 will be dismissed with prejudice for failure to state a claim upon which relief may be granted. To the extent the complaint states state-law claims, such claims will be dismissed without prejudice. An appropriate order will enter.

     _____
     Aleta A. Trauger
     United States District Judge

---

[2] Under Tennessee law, "[l]ibel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (citation omitted).